**OLIN CORPORATION, Plaintiff–Appellant,**

v.

**AMERICAN RE–INSURANCE COMPANY, Certain Underwriters at Lloyd's, Commercial Union Insurance Companies, as successor to Employers' Liability Assurance Corporation, Ltd., and Employers Commercial Union Insurance Corporation, Ltd., and Employers Commercial Union Insurance Company America, Continental Casualty Company, London & Edinburgh Insurance Company, Ltd., North River Insurance Company, Indemnity Insurance Company of North America, London Market Insurance Companies, Defendants–Appellees,**

**General Reinsurance Corporation, Third–Party–Defendant–Appellee,**

**Aetna Casualty & Surety Company, Third–Party–Defendant,**

**National Casualty Company, New York Property/Casualty Insurance Security Fund, Integrity Insurance Company, Transit Casualty Company, Allstate Insurance Company, as successor to Northbrook Excess and Surplus Insurance Company, National Union Fire Insurance Company of Pittsburgh,**

PA., The Hanover Insurance Co., as successor to Massachusetts Bonding and Insurance Co., AIG Insurance Co., American Home Co., Federal Insurance Co., Fireman's Fund Insurance Co., Government Employee's Insurance Co., Granite State Insurance Co., Harbor Insurance Co., The Home Insurance Co., Lexington Insurance Co., National American Company of California as successor to Stuyvesant Insurance Co., Great American Co., Insurance Company of North America, Employers Insurance of Wausau A Mutual Company, Defendants.

No. 02–9325.

United States Court of Appeals, Second Circuit.

Sept. 2, 2003.

Stephen A. Dvorkin, New York, New York, for Plaintiff–Appellant Olin Corporation.

John G. McAndrews (Mendes & Mount, LLP), New York, New York, for Defendants–Appellees Certain Underwriters at Lloyd's and London Market Insurance Companies; London & Edinburgh Insurance Company and North River Insurance Company.

James W. Christie, (Christie, Pabarue, Mortensen and Young PC), New York, New York, for Defendant–Appellee Commercial Union Insurance Company.

Michael L. Anania (Ford Marrin Esposito Witmeyer & Gleser, LLP), New York, New York, and (Thompson, O'Donnell, Markham, Norton & Hannon) Washington, D.C., for Defendants–Appellees American Re–Insurance Company and Continental Casualty Company.

Present: CALABRESI, RAGGI, and WESLEY, Circuit Judges.

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY OFFERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is **VACATED** and **REMANDED** for further proceedings not inconsistent with this opinion.

This lawsuit—now approaching 20 years in duration—involves environmental liabili-

ty coverage claims against excess carriers on policies spanning a 50–year coverage period. More specifically, Olin Corporation appeals from the district court's award of summary judgment in favor of certain excess insurers based on Olin's failure to give these insurers timely notice of claims involving two of its industrial waste sites, one in McIntosh, Alabama and the other in Ashtabula County, Ohio.

Olin commenced this action in 1984 seeking a declaration that its primary and excess insurers are liable for the costs associated with environmental remediation claims at a number of its manufacturing and disposal sites. The insurers moved for partial summary judgment as to three sites, claiming that Olin failed to provide timely notice of those claims, thus forfeiting the insurers' obligations to defend or indemnify Olin. The district court granted the motion, finding that notice was untimely as a matter of law as to all insurers. *See Olin Corp. v. Ins. Co. of N. Am., et al.,* 2002 U.S. Dist. LEXIS 16145, 2002 WL 1997927 (S.D.N.Y.2002).[1]

Throughout the period in question, Olin employed an extensive and integrated program of primary and excess liability coverage. The excess policies at issue here were purchased from defendants-appellees between 1954 and 1986. These policies do not "attach" to a loss, thus creating an indemnification obligation, until primary or lower-level excess policies are exhausted. The attachment points range anywhere from $250,000 to $30 million above the primary/excess coverage layers.

Olin does not contest the documentary evidence submitted by the insurers that indicates when it became aware of potential liability for remediation or pollution claims with regard to each site. Instead, it argues that the notice provisions of the excess policies cannot be properly analyzed without also considering the structure and layers of excess coverage. Olin contends that it was only required to give notice to an excess carrier when it appeared that a liability emerging from an occurrence or claim would "likely" implicate the indemnity limits of that carrier's excess policy, i.e., that the liability would likely reach that particular policy's attachment point. Lastly, Olin argues that the district court erred in failing to distinguish between the circumstances that triggered its notice obligation to its primary insurer and the circumstances that triggered its notice obligation to each excess carrier, the latter of which required a reasonable assessment of the claim's size or duration. We agree.

New York law governs the insurance policies at issue here. *See Olin Corp. v. Ins. Co. of N. Am.,* 743 F.Supp. 1044, 1048–1049 (S.D.N.Y.1990) *aff'd,* 929 F.2d 62, 64 (2d Cir.1991). It is well-settled that an insured's failure to satisfy a policy notice of claim requirement as to primary liability carriers is a breach of a condition precedent and a complete defense to coverage, even if the insurer has not suffered prejudice. *See Am. Home Assur. Co. v. Int'l Ins. Co.,* 90 N.Y.2d 433, 440, 661 N.Y.S.2d 584, 684 N.E.2d 14 (1997); *Com-*

---

1. After the District Court ruled in the insurers' favor, Olin withdrew its appeal and stipulated to judgment for all claims related to the third site. At this point Olin also withdrew its appeal and stipulated to judgment for its primary insurer—Insurance Company of North America—with respect to all three sites. Thus, only the claims related to the two remaining sites against the following excess insurers are before us: Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies; London & Edinburgh Insurance Company; and North River Insurance Company; American Re-insurance Company; Commercial Union Insurance Company; General Reinsurance Company; and Continental Casualty Company.

*mercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987); *see also Olin,* 929 F.2d at 64. This standard also applies to excess insurers, as they have "the same vital interest in prompt notice as do primary insurers" because they too have "the right to investigate claims and to participate in settlement negotiations" and "make their own settlement determinations" based on their individual risk assessments. *Id.* at 443, 684 N.E.2d 14.

Excess and primary policies have different notice accrual points. This Court has recognized that, as opposed to primary coverage, excess coverage "attaches only after a predetermined amount of 'primary' coverage has been exhausted." *Am. Home Assur. Co. v. Republic Ins. Co.,* 984 F.2d 76, 77 (2d Cir.1993). The district court correctly noted that Olin was required to provide notice to its excess carriers "as soon as practicable" after Olin had information from which it could reasonably conclude that an occurrence covered under an excess policy involved injuries or damage which, in the event Olin is held liable, would be likely to trigger the policy. *See Olin,* 2002 U.S. Dist. LEXIS at *10–11, citing Olin,* 743 F.Supp. at 1054.

Here, the excess policies require notice to the insurer "as soon as practicable" whenever the insured may "reasonably conclude" that a covered occurrence "is *likely* to involve th[e] policy." The numerous excess policies at issue appear to have attachment points ranging from $250,000 to $30 million of underlying loss above the primary and excess coverage layers. The district court made no findings with regard to when Olin had a reasonable expectation of liability vis-a-vis the attachment points of *each* excess policy. Thus, there is nothing in this record to determine when Olin reasonably should have concluded that the potential claims at the sites in question

were of sufficient magnitude to penetrate through the primary coverage and reach the excess policies. That determination is necessary prior to reaching a conclusion on whether Olin satisfied its notice obligation under the terms of each excess liability policy.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby VACATED and REMANDED for further proceedings not inconsistent with this opinion.